# Exhibit B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JENNIFER GUILMETTE, on behalf of herself and all : 
others similar situated, : No.: 25 Civ. 2395 (SIL)
 :
                Plaintiff, :
  - against - :
 :
BLISS RESTAURANT BAR & CATERING INC., and :
RONALD HOFFMAN, an individual, :
 :
                Defendants. :
------------------------------------------------------------------ X

## DECLARATON OF JENNIFER GUILMETTE

I, Jennifer Guilmette, declare as follows:

1.     I make the following declaration based on my own personal knowledge and am competent to testify on the matters presented in this declaration.

### Employment History

2.     I worked for Defendants at the restaurant called Bliss in Setauket, New York from about May 2022 through April 2024.

3.     Throughout my employment at Bliss, Defendants employed me as a server.

4.     As a server, I waited on Bliss's customers, taking their orders, bringing them food, and bringing them drinks, and performed sidework, as described below.

### How Defendants Paid Me and Others

5.     As a server, like bussers and bartenders, my income was primarily based on the tips Bliss's customers left me in cash or by way of a credit card payment. This declaration will refer to servers, bussers, and bartenders, collectively, as "Tipped Workers," as a result.

6.     Defendants never paid me an hourly wage. Rather, Defendants paid me a flat per-shift wage of $20.

Doc ID: 400d522230e100321d37abbd00af2c00fa428166

7. I was hired by the owner and manager of Bliss, Ronald Hoffman.

8. When he hired me, I met with him to discuss my experience and working at Bliss.

9. At no point during that discussion did Mr. Hoffman tell me that I would be paid less than the minimum wage or that Defendants were taking a credit against the minimum wage, whether for tips or any other purpose.

10. Even after I was hired, Mr. Hoffman never told me that Defendants would be taking a tip credit against the minimum wage.

11. Defendants never gave me any papers to review or sign that related to the minimum wage or a tip credit.

## **Work and Hours**

12. Generally, on weekdays excluding Friday, Bliss employed about five or six Tipped Workers per shift: two servers, two bussers, and two bartenders.

13. Then, on weekends and Fridays, Bliss employed about eight Tipped Workers per shift: four servers, two bartenders, and two or three bussers.

14. When I worked for Defendants, Bliss opened at 4:00 pm.

15. Tipped Workers arrived to start working at about 2:30 pm each day.

16. For the first one and a-half hours of their shift, Tipped Workers performed set-up duties as part of their daily side work. This side work included, but is not limited to, cutting up fruit and vegetables for service, setting up the outdoor patio, setting up various stations we used as Tipped Workers, stocking the condiments, folding and putting away linens, and polishing silverware and glasses.

17. From 4:00 pm to closing time, Tipped Workers helped customers.

Doc ID: 400d522230e100321d37abbd00af2c00fa428166

18. Throughout my employment, depending on the day, Bliss either closed at 9:00, 10:00, or 11:00 pm. Tipped Workers, however, commonly, stayed for about one hour after the end of their shift to finish their side work. That is, we, among other things, cleaned up the restaurant, reset tables, swept up, put away the outdoor décor, and put away dishes, silverware, and glasses.

19. I worked straight through the shift without taking a meal break in which I was fully relieved of my duties for longer than 15 to 20 minutes.

20. Given our required arrival times and when we finished our end-of-the-night work, when the restaurant closed at 11:00 pm, I regularly worked shifts lasting about nine and one-half hours, resulting in receiving an hourly wage of about $2.10.

21. When the restaurant closed on the earlier side, at 9:00 pm, I would regularly work until about 10:00 pm, which means that I received an hourly wage of about $2.66.

### Other Tipped Workers Like Me

22. I am seeking for myself and for my former co-workers, the back wages and other relief that we are entitled to receive under the law. As such, I am committed to seeing this lawsuit through to its conclusion. To date, I have worked with my attorneys to file the Complaint and bring this motion – all with the goal of benefiting not just myself, but all affected workers who were denied the full minimum wage under the Fair Labor Standards Act.

23. I know Tipped Workers completed hours of sidework per shift because Bliss is a relatively small restaurant. Bliss consists of a kitchen, a small office, a basement, a main dining room, a bar area, and an outdoor patio. It was, therefore, easy for me to see Tipped Workers doing sidework before and after our shifts. For the same reason, I know that Tipped Workers worked shifts lasting as long as the shifts that I worked.

24. For example, I recall seeing bartenders, such as Katt and Heather, cutting up garnishes, stocking liquor bottles, cleaning up behind the bar, breaking down the bar area, washing dishes and glasses, drying dishes and glasses, purring away dishes and glasses, and throwing away or putting away garnishes.

25. Likewise, I saw bussers, such as Henry and Jack, working in the kitchen to refill ketchups, set up the to-go station, slicing vegetables, carrying buckets of ice up from the basement to the bar area, cleaning up the kitchen prep area, putting away leftover food items for the next day, sweeping, mopping, putting covers on the liquor bottles and otherwise cleaning up.

26. Furthermore, I worked side by side with other servers, such as Crista, Lisa, John, Jon, Lilly Wittover, Andrew, Courage, and Taylor, who performed the same sidework that I did.

27. I know that other Tipped Workers were not paid an hourly wage at or above the minimum wage because I discussed how we were paid with my coworkers.

28. For instance, Jon and I talked about how we and other Tipped Workers were not paid hourly wages in or around November 2023. At the time, I was frustrated with inconsistent scheduling and how we weren't getting paid minimum wages. On one specific occasion, on November 9, 2023, via text message, I expressed to Jon my interest in bringing Defendants' failure to pay their employees a minimum wage to a lawyer or the Department of Labor. Jon agreed with me that reporting these wage violations may be necessary.

29. At other times throughout my employment with Defendants, I also spoke to Taylor and Lilly Wittover about how Defendants didn't pay us at or above the minimum wage. These conversations occurred when we were working together at Bliss.

30. Moreover, Mr. Hoffmann scheduled all of the Tipped Workers and paid us himself. He also set the workplace rules and policies.

31. Mr. Hoffmann did not require me or my fellow Tipped Workers to clock in or out. That is, there was neither a punch clock nor other timekeeping mechanism that Defendants used to track our hours worked. I know this not just because I was never required to record my actual hours worked, but also because I neither saw any Tipped Worker report their actual hours worked to Defendants nor heard anyone, whether a Tipped Worker or Mr. Hoffmann, discuss recording our hours worked.

32. I anticipate that if other Tipped Workers were notified of this lawsuit and given the opportunity to join it, they would likely come forward with claims for unpaid minimum wages.

33. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August _13_, 2025        _____
                                            Jennifer Guilmette